IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAYSHAWN DOUGLAS<br>1200 N. Capitol St. NW<br>APT 108<br>Washington, D.C. 20002,<br><br>           Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA<br>A Municipal Corporation<br>One Judiciary Square<br>441 Fourth Street, NW<br>Washington, D.C. 20001,<br><br>to serve:<br><br>VINCENT GRAY, Mayor<br>District of Columbia<br>1350 Pennsylvania Ave, NW, 5th Fl.<br>Washington, D.C. 20002,<br><br>IRVIN B. NATHAN<br>Attorney General<br>441 4th Street, N. W., 6th Fl.<br>Washington, D.C. 20004,<br><br>           Defendant. | **FILED**<br>NOV - 7 2013<br>Clerk, U.S. District and<br>Bankruptcy Courts<br><br><br>Civ. A. No:<br><br>Case: 1:13-cv-01758<br>Assigned To : Jackson, Ketanji Brown<br>Assign. Date : 11/7/2013<br>Description: TRO/PI |

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

COMES NOW the Plaintiff, by and through his attorneys, Steve Nabors and Charles A. Moran, and The Law Offices of Charles A. Moran, P.L.L.C. ("Moran and Associates"), and respectfully unto this Honorable Court states as follows that:

## JURISDICTION

1. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C §§ 1400-1461 (West 2004), as amended in 2004, 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 5 D.C.M.R. § 3000.1 *et seq.* (West 2013); .

2. Declaratory relief is authorized by 28 U.S.C §§ 2201, 2202.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Jayshawn Douglas ("Mr. Douglas") is a student with disabilities who has been identified as eligible for special education and related services under the IDEA by the District of Columbia Public School System ("DCPS").

5. Mr. Douglas' birthday is July 5, 1995, and he is eighteen (18) years-old.

6. Mr. Douglas is a resident of the District of Columbia currently residing at 1200 North Capitol Street, Northwest, Apartment #A108, Washington, D.C. 20002.

7. Defendant, the District of Columbia Government, is a municipal corporation that receives federal funds pursuant to the IDEA, to ensure access to a free and appropriate education ("FAPE") to all children until twenty-one years of age under federal law and twenty-two years of age under the local law, and is obligated to comply with the applicable federal regulations and statutes including but not limited to the IDEA.

## RELEVANT BACKGROUND

8. Mr. Douglas is a disabled student who is classified as "Other Health Impaired" under the IDEA.

9. In addition, a Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) assessment

2

conducted in January 2012 revealed that Mr. Douglas has a full-scale IQ of seventy-four (74), falling at the fourth (4th) percentile range. In other words, ninety-six percent (96%) of Mr. Douglas' peers function at a higher cognitive level than he does. As a result, Mr. Douglas has significant difficulty accessing the educational curriculum. *See January 2012 WAIS-IV Assessment*, attached hereto as Exhibit 1.

10. Since that time, Mr. Douglas has not been reassessed.

11. Due to Mr. Douglas' disabilities, he has failed the ninth grade. As a result, he is required by DCPS policy to repeat the ninth grade.

12. On May 10, 2013, an Annual Review meeting of Mr. Douglas' individualized education program ("IEP") was held. *See Individualized Education Plan*, attached hereto as Exhibit 2.

13. Also during that meeting, Mr. Douglas' IEP team established that Mr. Douglas' educational placement and location of services was Dunbar High School ("Dunbar") and memorialized that determination in his IEP. Since that time, the IEP team has not proposed any changes to Mr. Douglas' placement or location of services and Mr. Douglas has not received the statutorily mandated Prior Written Notice ("PWN") indicating a change in placement or location of services.

14. In addition, Mr. Douglas resides within Dunbar's boundaries as determined by DCPS. As such, Dunbar is also his "neighborhood school." *See EBIS: Boundary Information System Print-out*, attached hereto as Exhibit 3.

15. Mr. Douglas' IEP established that he "needs behavioral support services to assist [him] with his social emotional development in the school setting" because "his disability "impacts upon [his] ability to attend to academic tasks and fully engage in the general education

curriculum." (Exhibit 2, 9.)

16. On July 1, 2013, DCPS announced a policy by which repeating ninth graders would be segregated from first-time ninth graders and funneled into so-called "twilight academies." *See July 1, 2013 DCPS Press Release*, attached hereto as Exhibit 4.

17. On July 10, 2013, Dunbar Principal Steven Jackson stated to the Washington Informer newspaper, "I don't have failing students in my school . . . Either they attend the Twilight Academy or they go to summer school – in any case, they're not going to [repeat grades] at my school." Dorothy Rowley, *Concerns Voiced over D.C. Ninth-Grade Academies*, THE WASHINGTON INFORMER, Jul. 10, 2013, http://washingtoninformer.com/news/2013/jul/10/concerns-voiced-over-dc-ninth-grade-academies/?page=1 (brackets in original), attached hereto as Exhibit 5.

18. On August 26, 2013, Mr. Douglas attempted to attend school at Dunbar, but was refused admission by Dunbar's administration purportedly under Principal Jackson's direction.

19. Mr. Douglas repeated these efforts several times in the month of September.

20. On or about October 6, 2013, D.C. Superior Court Probation Officer Steven Dean ("Mr. Dean") contacted the District of Columbia Mayor's Liaison office in an effort to gain admission for Mr. Douglas. The Mayor's Liaison, Mr. Turner, stated that Mr. Douglas was entitled to attend Dunbar and should be admitted upon arrival.

21. On October 8, 2013, Mr. Dean accompanied Mr. Douglas to Dunbar in an effort to gain him admission. Mr. Dean and Mr. Douglas were informed by Dean of Students Crutchfield that Mr. Douglas would not be permitted to attend classes at Dunbar. Mr. Dean was informed that this was on the order of an individual he was led to believe was the principal of Dunbar. *See*

*Sworn Declaration of Steven Dean*, attached hereto as Exhibit 6.

22. On October 28, 2013, Mr. Douglas filed an administrative Due Process Complaint with the District of Columbia's Office of the State Superintendent for Education's ("OSSE") Student Hearing Office ("SHO"). *See Administrative Due Process Complaint*, attached hereto as Exhibit 7.

23. In that complaint, Mr. Douglas invoked his Stay Put rights by demanding: "Pursuant to 34 C.F.R. § 300.518(b), DCPS shall immediately grant the student admission to Dunbar Senior High School under the IDEA's stay-put provision." (Exhibit 7, 7.)

24. On the same day, an impartial hearing officer was assigned to hear Mr. Douglas' request for an administrative due process hearing.

25. As of the filing of this complaint, no stay put order has been issued by the impartial hearing officer.

26. As of the filing of this complaint, Mr. Douglas has been refused admission to his educational placement and location of services for the entire 2013-2014 school year.

27. As of the filing of this complaint, Mr. Douglas has been denied special education and related services for the entire 2013-2014 school year.

28. As of the filing of this complaint, Mr. Douglas has not received notice that his special education and related services would be terminated.

29. As of the filing of this complaint, Mr. Douglas has not received any type or form of hearing regarding the cessation of his special education and related services.

## Relevant Law
### IDEA

30. Once a due process complaint is filed, the IDEA provides that "during the pendency of any

5

proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). In addition, "[i]f the complaint involves an application for initial admission to public school, the child . . . must be placed in the public school until the completion of all proceedings." 34 C.F.R. § 300.518(b); *accord* 20 U.S.C. § 1415(j); 5-E D.C.M.R. § 3033.2. Should the school system eliminate a basic element of the education program, the parent or a student with a disability may invoke the stay-put provision and request a statutory injunction. *See Johnson v. D.C.*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012)("Once a due process complaint has been filed, a parent can invoke the stay-put provision when the school district proposes a change in the child's "then-current educational placement.")

31. The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *See e.g., Honig v. Doe*, 484 U.S. 304, 326 (1988); *Johnson v. District of Columbia*, 839 F.Supp. 2d 173, 176 (D.D.C. 2012); *Cochran v. District of Columbia*, 660 F.Supp. 314, 319 (D.D.C. 1987); *Saleh v. District of Columbia*, 660 F.Supp. 212, 215 (D.D.C. 1987); *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005); *Bd. of Educ. v. Brett Y.*, 959 F.Supp. 705, 709 (D.Md. 1997); *King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772, 783 (S.D.N.Y. 1996).

32. As the stay-put provision imposes an automatic statutory injunction, the traditional four-part test for an injunction does not apply. *D.K. ex rel. Klein v. District of Columbia*, 2013 WL 4518207 (D.D.C. 2013); *Alston v. District of Columbia*, 439 F.Supp.2d 86, 91-92 (D.D.C 2006); *Casey K. ex rel. Norman K*, 400 F.3d at 511.

33. While the "then-current educational placement" is not defined by the IDEA, "[t]ypically, the

dispositive factor in deciding a child's current educational placement should be the IEP actually functioning when the stay put is invoked." *Johnson*, 839 F. Supp. 2d at 177 (quoting *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir.1996))(internal quotations and punctuations omitted).

34. DCPS must ensure that all placement decisions are "based on the child's IEP [and are] as close as possible to the child's home." 34 C.F.R. § 300.116(b)(2)-(3); 5-E D.C.M.R. § 3013.1(e)-(f).

35. DCPS must also ensure that "[u]nless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled . . . ." 34 C.F.R. § 300.116(c); 5-E D.C.M.R. § 3013.2.

36. 34 C.F.R. § 300.114(a)(2)(ii); 5-E D.C.M.R. § 3011.1(b)("The LEA shall ensure that: Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.")

### §1983

37. 42 U.S.C. § 1983 ("§1983") creates a cause of action for any person who is deprived of any right, privilege, or immunity secured by the United States Constitution or federal law under color or authority of law.

38. A municipality, such as the District of Columbia, may be liable under 1983 if the governmental body subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation, i.e. - the violation is pursuant to official municipal policy. *Connick v. Thompson*, 131 S. Ct. 1350, 1359; *see also Hinson ex rel. N.H. v. Merritt Educ.*

*Ctr.*, 521 F. Supp. 2d 22, 28 (D.D.C. 2007). A municipality can be held liable for a single decision which results in an illegal deprivation if that decision is made by an individual who "may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)(quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

39. While something more than a mere failure to provide a FAPE must be shown, *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984), an action under § 1983 may be based upon violations of the IDEA. 20 U.S.C. § 1415; *Walker v. District of Columbia*, 969 F. Supp. 794, 797 (D.D.C. 1997); *Zearley v. Ackerman*, 116 F. Supp. 2d 109, 114 (D.D.C. 2000); *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 46-47 (D.D.C. 2002).

40. A Plaintiff will prevail on a 1983 claim based on a violation of the IDEA if (1) DCPS violated the IDEA; (2) "exceptional circumstances" exist; (3) "the District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) the normal remedies offered under the IDEA, including compensatory education, are inadequate to compensate the plaintiff for the harm he or she allegedly suffered." *Hinson ex rel. N.H. v. Merritt Educational Center*, 521 F. Supp. 2d 22, 29 (D.D.C. 2007). However, some courts in this Circuit have only required a showing that (1) DCPS violated the IDEA and (2) that the District has a custom or practice that is the moving force behind the violation. *Johnson*, 190 F. Supp. 2d at 46-47; *Zealey*, 116 F. Supp. 2d at 114.

41. The United States Constitution mandates that no person shall "be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V.

## Plaintiff's First Claim of Relief:
## Violation of the IDEA's Stay-Put Provision

42. The student re-alleges and incorporates by reference paragraphs 1-41.

43. According to Mr. Douglas' most recent IEP, his current educational placement and location of services is Dunbar High School. Mr. Douglas is entitled to be educated according to his individualized education plan at Dunbar because (1) it is the placement identified on his IEP, (2) is as close as possible to the child's home, and (3) is the school he would attend if he were non-disabled.

44. Despite the fact that Mr. Douglas has been identified as an individual entitled to special education and related services at Dunbar, he has been denied the entirety of those services as a result of the Dunbar administration refusing to admit him to school.

45. Because Mr. Douglas is being denied special education and related services, the entirety of his education program has been wholly and completely eliminated.

46. Because Mr. Douglas has not received any of the services identified in his IEP, Mr. Douglas has been denied a FAPE.

47. Having filed a due process complaint, Mr. Douglas is entitled to an injunction under the IDEA's stay-put provision ordering DCPS to immediately provide him with the services identified in his IEP.

## Plaintiff's Second Claim for Relief: Deprivation of Plaintiff's Right to a Free Appropriate Public Education without Due Process of Law.

48. The student re-alleges and incorporates by reference paragraphs 1-47.

49. DCPS' articulated policy of segregating repeating ninth-graders from first-time ninth graders has deprived and is depriving Mr. Douglas of the special education and related services that

9

he has a right to receive under the IDEA without due process of law.

50. DCPS' articulated policy of segregating repeating ninth-graders from first-time ninth graders has discriminated and is discriminating against Mr. Douglas on the basis of his disability, who had to repeat the ninth grade because his disability impedes his ability to learn.

51. Steven Jackson's decision in his official capacity as a DCPS Administrator and Principal of Dunbar Senior High School to refuse repeat ninth graders admission to Dunbar has deprived Mr. Douglas of the special education and related services that he has a right to receive under the IDEA without due process of law.

52. Steven Jackson's decision in his official capacity as a DCPS Administrator and Principal of Dunbar Senior High School to refuse repeat ninth graders admission to Dunbar has discriminated against and is discriminating against Mr. Douglas, who had to repeat ninth grade because his disability impedes his ability to learn, on the basis of his disability.

WHEREFORE, the Plaintiff prays that this Court:

1. Grant Mr. Douglas' accompanying motion for preliminary injunction and temporary restraining order, and order DCPS to immediately admit Mr. Douglas to Dunbar Senior High School and provide special education and related services as stated by his IEP until the conclusion of his underlying complaint at the Student Hearing Office;

2. Award One-hundred Thousand Dollars ($100,000) in compensatory damages;

3. Award Plaintiff's attorney fees and costs of this action; and

4. Award any other relief that the Court deems just and proper.

Respectfully submitted,

_____
STEVE NABORS, Bar No. 1016291
Managing Partner

_____
CHARLES A MORAN, Bar No. 970871
Senior Partner
Moran and Associates
1220 L Street, Suite 760
Washington, D.C. 20005
(202) 742-2056 (voice)
(202) 742-2097 (fax)
Attorneys for Plaintiff

## VERIFICATION

I, Jayshawn Douglas, solemnly affirm under penalty of perjury that the foregoing complaint is based upon the fullest extent of my knowledge of these these facts and these facts are correct.

_[signature]_                                                                    11/7/13
Jayshawn Douglas                                                                 Date
1200 N. Capitol St. NW
APT A108
Washington, D.C.  20002