IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV - 7 2013

Clerk, U.S. District and Bankruptcy Courts

| | |
|---|---|
| JAYSHAWN DOUGLAS, | |
| Plaintiff, | |
| v. | Civ. A. No: |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | Case: 1:13-cv-01758<br>Assigned To : Jackson, Ketanji Brown<br>Assign. Date : 11/7/2013<br>Description: TRO/PI |
| Defendant. | |

## MOTION FOR PRELIMINARY INJUNCTION UNDER STAY PUT PROVISION

Pursuant to Rule 65(a) and (d) of the Federal Rules of Civil Procedure, Plaintiff Jayshawn Douglas ("Mr. Douglas") respectfully requests that this Court issue a preliminary injunction requiring the Defendant to comply with the Individuals with Disabilities Education Act's ("IDEA") Stay Put provision and grant him entry to his educational placement and location of services, Dunbar Senior High School. The grounds for this motion appear in the accompanying memorandum of points and authorities and exhibits.

WHEREFORE, the Plaintiff requests that this motion be granted.

Respectfully Submitted,

/s/ Steve Nabors

STEVE NABORS, Bar No. 1016291
Moran and Associates
1220 L Street, Suite 760
Washington, D.C. 20005
(202) 742-2056 (voice)
(202) 742-2097 (fax)
steve.nabors@camoranlaw.com

/s/ Charles A Moran

CHARLES A MORAN, Bar No. 970871
Moran and Associates
charles.moran@camoranlaw.com

11/7/13
DATE

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAYSHAWN DOUGLAS, | : |
| Plaintiff, | : |
| | : Civ. A. No: |
| v. | : |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | : |
| Defendant. | : |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION

In this case, immediate injunctive relief is necessary to prevent further irreparable injury to a disabled student, Jayshawn Douglas ("Mr. Douglas" or "the Student"), and to protect his right to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The District of Columbia ("the Defendant") and its agency, the District of Columbia Public Schools ("DCPS"), have barred this student from receiving special education and related services and, in the process, have denied and continue to deny the Student his right to a free appropriate public education ("FAPE").

I. Factual Background

1. Mr. Douglas is a student with disabilities who has been identified by DCPS as eligible for special education and related services under the IDEA.

2. Mr. Douglas is classified as "Other Health Impaired" under the IDEA.

3. In addition, a Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) assessment conducted in January 2012 revealed that Mr. Douglas has a full-scale IQ of seventy-four (74), falling in the fourth (4th) percentile range. In other words, ninety-six percent (96%) of Mr. Douglas' peers

function at a higher cognitive level than he does. As a result, Mr. Douglas has significant difficulty accessing the educational curriculum. *See January 2012 WAIS-IV Assessment*, attached hereto as Exhibit 1.

4. Since that time, Mr. Douglas has not been reassessed.

5. Due to Mr. Douglas' disabilities, he has failed the ninth grade. As a result, he is required by DCPS policy to repeat the ninth grade.

6. On May 10, 2013, an Annual Review meeting of Mr. Douglas' individualized education program ("IEP") was held. *See Individualized Education Plan*, attached hereto as Exhibit 2.

7. During that meeting, Mr. Douglas' IEP team established that Mr. Douglas' educational placement and location of services was Dunbar High School ("Dunbar") and memorialized that determination in his IEP. Since that time, the IEP team has not proposed any changes to Mr. Douglas' placement or location of services and Mr. Douglas has not received the statutorily mandated Prior Written Notice ("PWN") indicating a change in placement or location of services.

8. Mr. Douglas resides within Dunbar's boundaries as determined by DCPS. As such, Dunbar is also his "neighborhood school." *See EBIS: Boundary Information System Print-out*, attached hereto as Exhibit 3.

9. Mr. Douglas' IEP further established that he "needs behavioral support services to assist [him] with his social emotional development in the school setting" because "his disability "impacts upon [his] ability to attend to academic tasks and fully engage in the general education curriculum."
   (Exhibit 2, 9.)

10. On July 1, 2013, DCPS announced a policy by which repeating ninth graders would be segregated from first-time ninth graders and funneled into so-called "twilight academies." *See July 1, 2013*

*DCPS Press Release*, attached hereto as Exhibit 4.

11. On July 10, 2013, Dunbar Principal Steven Jackson stated to the Washington Informer newspaper, "I don't have failing students in my school . . . Either they attend the Twilight Academy or they go to summer school – in any case, they're not going to [repeat grades] at my school." Dorothy Rowley, *Concerns Voiced over D.C. Ninth-Grade Academies*, THE WASHINGTON INFORMER, Jul. 10, 2013, http://washingtoninformer.com/news/2013/jul/10/concerns-voiced-over-dc-ninth-grade-academies/?page=1 (brackets in original), attached hereto as Exhibit 5.

12. On August 26, 2013, Mr. Douglas attempted to attend school at Dunbar, but was refused admission by Dunbar's administration purportedly under Principal Jackson's direction.

13. Mr. Douglas repeated these efforts several times in the month of September.

14. On September 17, 2013, Plaintiff's counsel spoke with Dr. Courtney Davis, Dunbar's Special Education Coordinator. In that conversation, she indicated that Mr. Douglas was currently enrolled at Dunbar and would be provided services as soon as he attended.

15. On September 27, 2013, Dunbar's Assistant Principal, Mr. Thompson, allegedly informed DCPS' court liaison Willie Wigfall that Mr. Douglas was not only permitted to attend Dunbar, but expected by the school's administration.

16. On or about October 6, 2013, D.C. Superior Court Probation Officer Steven Dean ("Mr. Dean") contacted the District of Columbia Mayor's Liaison office in an effort to gain admission for Mr. Douglas. The Mayor's Liaison, Mr. Turner, confirmed that Mr. Douglas was entitled to attend Dunbar and should be admitted upon arrival.

17. On October 8, 2013, Mr. Dean accompanied Mr. Douglas to Dunbar in an effort to gain him admission. Despite Mr. Thompson's alleged assertions to Ms. Wigfall a week prior, Mr. Dean and

Mr. Douglas were informed by Dean of Students Crutchfield that Mr. Douglas would not be permitted to attend classes at Dunbar. Mr. Dean was informed that this was on the order of an individual he was led to believe was the principal of Dunbar. *See Sworn Declaration of Steven Dean*, attached hereto as Exhibit 6.

18. On October 15, 2013, Plaintiff's counsel again spoke with Dr. Davis in an effort to gain Mr. Douglas admission to Dunbar. These efforts were fruitless and Mr. Douglas remained barred from Dunbar.

19. On October 29, 2013, Mr. Douglas filed an administrative Due Process Complaint with the District of Columbia's Office of the State Superintendent for Education's ("OSSE") Student Hearing Office ("SHO"). *See Administrative Due Process Complaint*, attached hereto as Exhibit 7.

20. In that complaint, Mr. Douglas invoked his Stay Put rights by demanding: "Pursuant to 34 C.F.R. § 300.518(b), DCPS shall immediately grant the student admission to Dunbar Senior High School under the IDEA's stay-put provision." (Exhibit 7 at 7.)

21. On the same day, an impartial hearing officer was assigned to hear Mr. Douglas' request for an administrative due process hearing. In addition, Maya Washington was assigned as the assistant attorney general representing DCPS on this matter. *See OSSE Appointment Order*, attached hereto as Exhibit 8.

22. On November 1, 2013, Plaintiff's counsel sent an email to Ms. Washington attempting to gain admission for Mr. Douglas to Dunbar. *See Nov. 1 Email from Steve Nabors to Maya Washington*, attached hereto as Exhibit 9. Ms. Washington did not reply.

23. As of the filing of this complaint, no stay put order has been issued by the impartial hearing officer.

24. As of the filing of this complaint, Mr. Douglas has been refused admission to his educational

placement and location of services for the entire 2013-2014 school year.

25. As of the filing of this complaint, Mr. Douglas has been denied special education and related services for the entire 2013-2014 school year.

26. As of the filing of this complaint, Mr. Douglas has not received notice that his special education and related services would be terminated.

27. As of the filing of this complaint, Mr. Douglas has not received any type or form of hearing regarding the cessation of his special education and related services.

**II. Mr. Douglas is Entitled to an Automatic Injunction as a Matter of Law.**

Once a due process complaint is filed, the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). In addition, "[i]f the complaint involves an application for initial admission to public school, the child . . . must be placed in the public school until the completion of all proceedings." 34 C.F.R. § 300.518(b); *accord* 20 U.S.C. § 1415(j); 5-E D.C.M.R. § 3033.2. Should the school system eliminate a basic element of the education program, the parent or a student with a disability may invoke the stay-put provision and request a statutory injunction. *See Johnson v. D.C.*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012)("Once a due process complaint has been filed, a parent can invoke the stay-put provision when the school district proposes a change in the child's "then-current educational placement.") While the "then-current educational placement" is not defined by the IDEA, "[t]ypically, the dispositive factor in deciding a child's current educational placement should be the IEP actually functioning when the stay put is invoked." *Johnson*, 839 F. Supp. 2d at 177 (quoting *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir.1996))(internal quotations and punctuations omitted).

The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *See e.g., Honig v. Doe*, 484 U.S. 304, 326 (1988); *Johnson v. District of Columbia*, 839 F.Supp. 2d 173, 176 (D.D.C. 2012). As the stay-put provision imposes an automatic statutory injunction, the traditional four-part test for an injunction does not apply. *D.K. ex rel. Klein v. District of Columbia*, 2013 WL 4518207 (D.D.C. 2013); *Alston v. District of Columbia*, 439 F.Supp.2d 86, 91-92 (D.D.C 2006).

Mr. Douglas is entitled to a Stay Put injunction as a matter of law for three reasons. First, Mr. Douglas filed a due process complaint under the IDEA on October 28, 2013. (Exhibit 7.) Having filed a complaint, 20 U.S.C. § 1415(j) has been triggered and DCPS must allow Mr. Douglas to enter his "then current educational placement" and receive the special education and related services. In addition, DCPS is required to place Mr. Douglas in Dunbar under 34 C.F.R. § 300.518(b) because he has been denied entry to the school all year, thus his complaint also involves the application for initial admission to public school. *Accord* 20 U.S.C. § 1415(j); 5-E D.C.M.R. § 3033.2.

Second, Mr. Douglas' "then-educational placement" is Dunbar Senior High School. The dispositive factor in determining a child's current educational placement is the IEP actually functioning when a Stay Put injunction is sought. *Johnson*, 839 F. Supp. 2d at 177. Mr. Douglas' current and functioning IEP unambiguously identifies "Dunbar SHS" as his "school" on the first page of his individualized education plan. (Exhibit 7, 1.) Further, his IEP specifically states that "Jayshawn is currently enrolled in the Twilight Program at Dunbar Senior High School." (Exhibit 7, 18.) As the dispositive factor in determining his educational placement, Mr. Douglas' IEP demonstrates that Dunbar is his "then-educational placement" for the purposes of a Stay Put injunction.

Finally, DCPS has eliminated a fundamental element of Mr. Douglas' educational program by

wholly denying Mr. Douglas the entirety of the services identified in his IEP. Despite attempting numerous times to attend Dunbar and receive services, including being accompanied by Probation Officer Dean - an officer of the D.C. Superior Court - DCPS has refused to provide Mr. Douglas any of his educational program. In doing so, DCPS has not only eliminated a single element of Mr. Douglas' educational program, but the entire program.

Given that Mr. Douglas has filed a due process complaint, has demonstrated that Dunbar is his "then-current placement," and has shown that DCPS has eliminated a fundamental element of his educational program, Mr. Douglas respectfully submits that he is entitled to an automatic Stay Put injunction permitting him to attend and remain at Dunbar until the completion of the underlying administrative proceedings.

### III. Mr. Douglas is Entitled to Injunctive Relief Under the Traditional Test for Injunctive Relief.

Mr. Douglas also meets the traditional standards for injunctive relief as set out in *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977):

1. Has the petitioner made a strong showing that she is likely to prevail on the merits?
2. Has the petitioner shown that without such relief she will suffer irreparable injury?
3. Would the issuance of the injunction substantially harm other interested parties?
4. Is the relief sought in the public interest?

Mr. Douglas is not required to prevail on each of these factors. *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d 71, 77-78 (D.D.C. 2003). Rather, under *Holiday Tours*, the factors must be viewed as a continuum, with more of one factor compensating for less of another. "If the arguments for one factor

are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D. C. Cir. 1995). An injunction is justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Alternatively, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. *Blackman,* 277 F. Supp. 2d 71 at 78. The necessary level or degree of likelihood of success that must be shown will vary according to the court's assessment of the other factors. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843–45.

Since DCPS is prohibited from altering or eliminating Mr. Douglas' educational program during the pendency of an administrative action and DCPS has completely eliminated Mr. Douglas' educational program by denying him access to his school, Mr. Douglas is likely to prevail on the merits. Further, DCPS' refusal to provide special education and related services to a disabled student as required by the IDEA is causing and will continue to cause irreparable harm absent injunctive relief. Moreover, because DCPS already had a legal duty to implement these services and is provided federal funding to pay for them, DCPS cannot argue that it will suffer any harm by using federal funds to provide special education and related services to a District resident in a public school. Finally, the public interest favors the provision of a public education to eligible students in order to permit them to participate in and positively contribute toward society. For these reasons, Mr. Douglas is entitled to injunctive relief.

### A. Mr. Douglas is likely to succeed on the merits.

DCPS must provide all disabled students residing in the District a FAPE. 20 U.S.C. § 1412(a)(1)(A); *Brown v. D.C.,* 568 F. Supp. 2d 44, 47 (D.D.C. 2008). If DCPS fails to provide a substantial portion of or service contained within a student's IEP, DCPS has committed a "material failure to

implement" and denied him a FAPE. *Turner v. D.C.*, CIV.A. 12-1943 ESH, 2013 WL 3324358 at 7-8 (D.D.C. July 2, 2013)(Huvelle, J.). Once a student demonstrates a material failure, he is not further required to further show the harm suffered prevail. *Id.*

DCPS has materially failed to implement Mr. Douglas' IEP because it has not provided <u>any</u> of the services identified within his IEP. Mr. Douglas need not show which service in his IEP was denied because, by virtue of barring him from attending his school, DCPS has denied Mr. Douglas all of the services in his IEP. As a result, DCPS has materially failed to implement his IEP and denied him a FAPE. As such, Mr. Douglas is likely to prevail on the merits.

> B. *Irreparable Harm Has and Will Continue to Occur Absent Injunctive Relief.*

Unless this Court intervenes, DCPS will continue to cause irreparable harm to Mr. Douglas by withholding special education and related services without due process of law. Courts in this circuit have emphatically held that DCPS' failure to provide a FAPE to disabled students results in immediate, devastating, and irreparable harm:

> the District consistently has failed to recognize the serious physical, emotional and educational difficulties that individual Plaintiffs face as a result of Defendants' failure to comply with the IDEA . . . . While a few months in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our Plaintiff, a few months can make a world of difference in the life of that child."

*Blackman v. Dist. of Columbia*, 185 F.R.D. 4, 7 (D.D.C. 1999)(quoting *Foster v. District of Columbia*, Civil Action No. 82–0095, Memorandum Opinion and Order of February 22, 1982, at 4 (D.D.C.) (J.H. Green, J.)).

Mr. Douglas is a student whose disability has caused him to struggle in school his entire life. In spite of that fact, Mr. Douglas returned to school this year even though he is eighteen years old and therefore had a legal right to drop out and end his struggles in public school. In response, DCPS

refused him the very services that its employees determined he required to learn and contribute to society. DCPS' persistent refusal to admit Mr. Douglas to school not only denies him special education, it erodes his confidence and determination to overcome his disability and become a productive member of society. Moreover, despite repeated and earnest efforts by both Probation Officer Dean and Plaintiff's counsel, DCPS continues to deny Mr. Douglas special education and related services. In order to prevent the devastating and irreparable harm DCPS is currently inflicting on a disabled student who is simply attempting attend school, this Court should issue a preliminary injunction.

### C. *There is no harm to the Defendants.*

Under the IDEA, the District of Columbia receives federal monetary assistance to establish "policies and procedures to ensure," that FAPE is available to disabled students. *See* 20 U.S.C. § 1412(a)(1)(A). In this regard, the federal government provides funds to DCPS to provide precisely the type of services that Mr. Douglas is seeking this injunction to obtain. At present, the District is denying an education to a student literally standing at the school house door. Worse yet, the student is an individual with disabilities attempting to obtain accommodating services in order to overcome his inability to learn. Given that the federal government has provided tax payers' dollars precisely for the purpose of providing disabled students with an appropriate public education, DCPS cannot argue that it will be harmed by expending the funds for their stated purpose. *See Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th. Cir. 1986)("We also fail to see how enforcing a statute designed to promote the pulic welfare disserves the public.") For these reasons, this Court should grant this injunction.

### D. *The public interest favors the granting of injunctive relief.*

"The public interest lies in the proper enforcement of the orders of the Court and the IDEA and in securing the due process rights of special education students and their parents provided by statute."

*Petties v. D.C.*, 238 F. Supp. 2d 98, 99 (D.D.C. 2002). Granting an injunction which orders DCPS to provide Mr. Douglas with special education and related services will reinforce the importance of timely compliance with the IDEA. Furthermore, supporting a disabled student's efforts to learn and contribute to society is in the public interest. For these reasons, this Court should grant this injunction and allow Mr. Douglas to return to school until all judicial proceedings are complete.

### IV. The Appropriate Remedy is a Stay Put Injunction Ordering DCPS to Provide Special Education and Related Services at Dunbar High School During the Pendency of All Proceedings.

The IDEA's stay put provision requires that a student with a disability remain in his current educational placement during a "judicial proceeding regarding a due process complaint." 34 C.F.R. § 300.518(a); see also *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 98-99 (D.D.C. 2006) ("courts have consistently interpreted the stay put provision to be an automatic injunction"). A school system's "outright denial of educational services" constitutes a violation of the Stay Put and the IDEA. *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 681 (4th Cir. 2004).

A Stay Put injunction is absolutely necessary in this case because DCPS is already violating the Stay Put provision of the IDEA and will continue to violate this provision without an order from this Court to cease its illegal activity. Moreover, Mr. Douglas is an at-risk student who is attempting to overcome his disabilities by attending school and receiving the services that DCPS has already found he requires. Further, neither the efforts of Probation Officer Dean nor Plaintiff's counsel have been able to obtain special education and related services for Mr. Douglas. For these reasons, Mr. Douglas has been compelled as a matter of necessity to seek an injunction. This Court should grant this motion and order DCPS to admit Mr. Douglas to Dunbar Senior High School and allow him to remain there during the pendency of judicial proceedings in this case.

## V. Conclusion

Mr. Douglas is a disabled student who resides in the District of Columbia and has been identified as a student entitled to receive special education and related services from DCPS. DCPS is provided federal tax dollars to provide special education and related services to students with disabilities who reside in the District. Because DCPS has denied Mr. Douglas all of the services it receives federal funding to provide, Mr. Douglas has filed an administrative due process complaint. Having filed an administrative due process complaint, the IDEA mandates that DCPS maintain the students "then-current educational placement" during the pendency of all judicial proceedings. Mr. Douglas' "then-current educational placement" as identified by his IEP is Dunbar Senior High School, but DCPS continues to bar him from attending all classes and receiving any services. For these reasons, this Court should grant a Stay Put injunction in accordance with the IDEA and to prevent further irreparable harm resulting from complete denial of services to a disabled student.

Respectfully Submitted,

_____
STEVE NABORS, Bar No. 1016291
Managing Partner

_____
CHARLES A MORAN, Bar No. 970871
Senior Partner
Moran and Associates
1220 L Street, Suite 760
Washington, D.C. 20005
(202) 742-2056 (voice)
(202) 742-2097 (fax)
steve.nabors@camoranlaw.com
charles.moran@camoranlaw.com
Attorneys for Plaintiff

11/7/13
_____
Date

## TABLE OF EXHIBITS

| Exhibit | Title |
| --- | --- |
| 1 | WAIS-IV |
| 2 | 2013 IEP |
| 3 | EBIS: Boundary Information Systems Print Out |
| 4 | DCPS Press Release |
| 5 | Steven Jackson Statement in Washington Informer |
| 6 | Sworn Declaration of Steven Dean |
| 7 | Due Process Complaint |
| 8 | Administrative Appointment Order |
| 9 | Nov. 1 Email from Steve Nabors to Maya Washington |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAYSHAWN DOUGLAS, | : |
| | : |
| Plaintiff, | : |
| | : Civ. A. No: |
| v. | : |
| | : |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | : |
| | : |
| Defendant. | : |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 65.1**

Pursuant to Local Rule 65.1, I, Steve Nabors, hereby certified that I provided notice to the Defendant, District of Columbia, by leaving a voicemail with Assistant Attorney General Justin Douds, Esq., at (202) 478-5935 on November 6, 2013 at approximately 5:25 p.m. and by emailing a courtesy copy of all filings at __2:32__ __pm__ to justin.douds@dc.gov. (attached hereto). Mr. Douds is the assistant attorney general assigned to the underlying administrative case before the Office of the State Superintendent for Education's Student Hearing Office.

_/s/ SCN_
STEVE NABORS, Bar No. 1016291
Managing Partner
Moran and Associates
1220 L Street, Suite 760
Washington, D.C. 20005
(202) 742-2056 (voice)
(202) 742-2097 (fax)
Attorney for Plaintiff