UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

JAYSHAWN DOUGLAS,

      Plaintiff,

v.

DISTRICT OF COLUMBIA,

      Defendant.

Civil Action No. 13-1758 (PLF)

---

## MEMORANDUM OPINION

This matter is before the Court on the plaintiff's motions for a temporary restraining order and for a preliminary injunction. Plaintiff Jayshawn Douglas seeks a court order directing the defendant, the District of Columbia, to enroll Mr. Douglas at Dunbar Senior High School, pursuant to 20 U.S.C. § 1415(j). The Court heard oral argument on plaintiff's motions on November 13, 2013. After reviewing the parties' arguments as set forth in their papers and at oral argument, and for the reasons set forth below, the Court will grant the plaintiff's motion for preliminary injunction and will deny as moot his motion for a temporary restraining order.[1]

---

[1] The papers reviewed in connection with the pending motions include the following: plaintiff's complaint ("Compl.") [Dkt. 1]; plaintiff's May 10, 2013 individualized education program ("IEP"), Compl., Ex. 2; plaintiff's administrative due process complaint ("Due Process Compl."), Compl., Ex. 7; plaintiff's motion for a temporary restraining order ("TRO Mot.") [Dkt. 2]; plaintiff's motion for a preliminary injunction ("PI Mot.") [Dkt. 3]; defendant's opposition to plaintiff's motions ("Def. Opp.") [Dkt. 5]; initial order of the Office of the State Superintendent of Education Student Hearing Office ("SHO Initial Order"), Def. Opp., Exh. 1; defendant's response to plaintiff's administrative due process complaint ("Def. Resp. Due Process Compl."), Def. Opp., Exh. 3; plaintiff's reply in support of his motions ("Pl.

As an initial matter, the Court notes that Mr. Douglas' motions are properly before the Court. Although a plaintiff generally must exhaust his administrative remedies before bringing a civil action under the Individuals with Disabilities Education Act ("IDEA"), there is no exhaustion requirement for seeking injunctive relief pursuant to the IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). See F.S. ex rel. Snyderman v. Dist. of Columbia, Civ. Action No. 06-923, 2007 WL 1114136, at *5 (D.D.C. Apr. 13, 2007); Alston v. Dist. of Columbia, 439 F. Supp. 2d 86, 91 (D.D.C. 2006); see also Murphy v. Arlington Cent. School Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002).

> The stay-put provision of the IDEA provides, in relevant part:
>
> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]

20 U.S.C. § 1415(j). This subsection provides that when a disabled student challenges a change in his "educational placement," the agency must maintain the student in his current educational placement "through both administrative and judicial proceedings, including an appeal from an administrative decision following a due process hearing." Dist. of Columbia v. Vinyard, 901 F. Supp. 2d 77, 83 (D.D.C. 2012) (citing 34 C.F.R. § 300.518(a)).

Courts have interpreted the stay-put provision as an automatic injunction, akin to the automatic stay in bankruptcy proceedings; therefore, the traditional four-part test for a preliminary injunction does not apply. See Dist. of Columbia v. Vinyard, 901 F. Supp. 2d at 83 (collecting cases); Alston v. Dist. of Columbia, 439 F. Supp. 2d at 91; see also Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist., 400 F.3d 508, 511 (7th Cir. 2005) (comparing

---

Reply") [Dkt. 6]; transcript of November 12, 2013 resolution session ("Resolution Sess. Tr."), Pl. Reply, Ex. 1.

stay-put injunction to an automatic stay in bankruptcy case). To invoke the stay-put, a student or his parent need only show that the school system "proposes a 'fundamental change in, or elimination of, a basic element of the [then-current educational placement].'" Dist. of Columbia v. Vinyard, 901 F. Supp. 2d at 83 (alteration in original) (quoting Lunceford v. Dist. of Columbia Bd. of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984)). The question before the Court, then, is whether a fundamental change in educational placement has occurred or is proposed. As Judge Kollar-Kotelly recently observed, "[t]he IDEA does not define the term 'then-current educational placement,' but the courts have explained that a child's educational placement 'falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP.'" Johnson v. Dist. of Columbia, 839 F. Supp. 2d 173, 176-77 (D.D.C. 2012) (quoting Bd. of Educ. of Community High Sch. Dist. No. 218, Cook County, Ill. v. Ill. State Bd. of Educ., 103 F.3d 545, 548 (7th Cir. 1996)).

The parties agree on certain facts. Mr. Douglas is an eighteen-year old resident of the District of Columbia. Compl. ¶¶ 5-6. He failed ninth grade last year, after missing approximately 95 days of class, and is required to repeat that grade. See Compl. ¶ 11; IEP 2, 16. Mr. Douglas has been classified as disabled and "Other Health Impaired" under the IDEA. Compl. ¶ 8.

The terms of Mr. Douglas' educational placement are set forth in his individualized education program ("IEP"), which, until recently, has been implemented at his neighborhood high school, Dunbar Senior High School ("Dunbar"). IEP 17; see also Compl. ¶¶ 13, 14. His IEP specifies that his current course of study is the "Twilight Program" at Dunbar, which provides for an extended school day for qualifying at-risk students. IEP 17; see also Compl. ¶ 17. The IEP also calls for the provision each month of two hours of "behavioral

3

support services to assist [him] with his social emotional development in the school setting," and seven and a half hours each week of specialized instruction within a general education setting. IEP 9-11.

Prior to the 2013-2014 school year, DCPS staff, Mr. Douglas, and Mr. Douglas' parent participated in discussions about changing Mr. Douglas' assignment from Dunbar to another school or program. Resolution Sess. Tr. 8-9. As of the first day of classes this fall, however, no IEP meeting had been held, nor had any formal reassignment been made. Id. Mr. Douglas attempted to attend classes at Dunbar, but Dunbar staff did not permit him to enter the school. Compl. ¶ 18. He since has been excluded from Dunbar on multiple occasions since that date. Id. ¶¶ 18-21; see also Resolution Sess. Tr. 22-23. The parties agree that it would be possible to implement Mr. Douglas' IEP at Dunbar but for the refusal of Dunbar's staff to admit him to the school. See Def. Resp. Due Process Compl. 2 ("DCPS has an appropriate IEP in place for Petitioner that can be implemented at Roosevelt STAY or at Dunbar."). On October 28, 2013, Mr. Douglas filed an administrative due process complaint challenging, among other things, Dunbar's refusal to admit him. Compl. ¶ 22; Due Process Compl. A hearing before a hearing officer is scheduled for January 2, 2014. SHO Initial Order 1.

The District has proposed that Mr. Douglas attend a different public high school, but has not formally transferred him to an alternative location. See Def. Opp. 3; Def. Resp. Due Process Compl. 2. In their papers and at oral argument, the District has been inconsistent as to whether its proposal is for Mr. Douglas to attend Roosevelt STAY, a program focused on adult students who have obtained six or fewer credits toward graduation, or a "transition academy" at Roosevelt Senior High School. Compare Def. Opp. 3 (discussing Roosevelt Senior High

4

School), with Def. Resp. Due Process Compl. 2 (discussing Roosevelt STAY); see also Resolution Sess. Tr. 9-11 (comparing the two programs).

The District has asserted that Mr. Douglas' IEP can be implemented at the Roosevelt placement, but has provided no evidence to support this assertion – either to the plaintiff and his family or to the Court. Def. Resp. Due Process Compl. 2. At oral argument, counsel for Mr. Douglas suggested that Roosevelt STAY is likely a more restrictive environment, with less exposure to nondisabled peers, than Mr. Douglas' previous program at Dunbar. There is insufficient evidence in the record, however, to enable the Court to determine whether the educational services to be offered to Mr. Douglas at Roosevelt would be equivalent to those offered at Dunbar.

Both Roosevelt Senior High School and Roosevelt STAY are located in the Petworth neighborhood of Washington, D.C., several miles from Mr. Douglas' home. Transportation services would have to be provided to Mr. Douglas for him to attend classes there. Transportation services are not currently provided for in Mr. Douglas' IEP. See generally IEP.

The Court finds that Mr. Douglas has made the requisite showing to trigger "stay-put" relief.[2] The school district's proposal for an assignment to Roosevelt is amorphous at best, and provides neither the Court nor Mr. Douglas with any assurance that the educational services offered at Roosevelt will not effect "a fundamental change in, or elimination of, a basic element" of Mr. Douglas' educational program. Lunceford v. Dist. of Columbia Bd. of Educ., 745 F.2d at 1582; see also Dist. of Columbia v. Vinyard, 901 F. Supp. 2d at 83. Moreover, reassignment to

---

[2] The Court assumes without deciding that ultimately the burden of demonstrating a change in "current educational placement" remains with the plaintiff, even if, as here, the District has failed to provide meaningful information to the student about the proposed reassignment.

5

Roosevelt is inconsistent with the IDEA's requirement that "[u]nless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled." 34 C.F.R. § 300.116(c); D.C. Mun. Regs. subt. 5-E, § 3013.2. It also runs counter to the IDEA's requirement that placements be "as close as possible to the child's home." 34 C.F.R. § 300.116 (b)(3); see also D.C. Mun. Regs. subt. 5-E, § 3013.1(f).[3]

Given the vague and belated nature of the District's proposal for providing alternative services at Roosevelt, and given the fact that the District's proposal would impose a significant burden on Mr. Douglas, in requiring him to commute several miles each day for educational services that can be provided two blocks from his home, the Court finds that a stay-put order is warranted.

An Order consistent with this Memorandum Opinion shall issue this same day.

DATE: 11/14/13

PAUL L. FRIEDMAN
United States District Judge

---

[3] The Court does not find that transferring a student from his neighborhood school to a school several miles away *necessarily* constitutes a change in educational placement. Under the present circumstances, however, where the student's academic problems are directly linked to truancy issues, such a transfer is likely to have a significant impact on the student's educational program.