UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
JAYSHAWN DOUGLAS,                  )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civil Action No. 13-1758 (PLF)
                                   )
DISTRICT OF COLUMBIA,              )
                                   )
            Defendant.             )
_____)

OPINION AND ORDER

This action was filed under 20 U.S.C. § 1415(j) and 42 U.S.C. § 1983 to enforce the rights of plaintiff Jayshawn Douglas under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. This Court previously entered a "stay-put" order, granting relief on plaintiff's Section 1415(j) claim. Pursuant to the IDEA, plaintiff seeks attorneys' fees and costs incurred in pursuing the "stay-put" order, totaling $25,499.65. The District of Columbia opposes the motion, arguing that plaintiff is not a "prevailing party" and thus is not entitled to fees and costs; and, in the alternative, it argues that the fees should be substantially reduced. Upon consideration of the parties' papers, the relevant legal authorities, and pertinent portions of the record in this case, the Court will grant plaintiff's motion in part and deny it in part, and will award attorneys' fees and costs in the amount of $17,009.62, representing $16,034.00 in attorneys' fees and $975.62 in costs.[1]

---

[1] The papers considered in connection with the pending motion include: plaintiff's complaint ("Compl.") [Dkt. No. 1]; plaintiff's May 10, 2013 individualized education program ("IEP") [Dkt. No. 1-1]; plaintiff's administrative due process complaint ("Due Process Compl.") [Dkt. No. 1-7]; plaintiff's motion for preliminary injunction ("PI Mot.") [Dkt. No. 3];

## I.  BACKGROUND

The facts are summarized as relevant.  The Court's prior memorandum opinions provide more detail.  <u>See</u> Mem. Op. at 3-5; MTD Op. at 2-3.  Jayshawn Douglas is an eighteen-year old resident of the District of Columbia.  Compl. ¶¶ 5-6, 8.  He is a student with disabilities who has been classified as "Other Health Impaired" under the IDEA.  Compl. ¶ 8.  Mr. Douglas' individualized education program ("IEP") states that his current placement is the Twilight Program at Dunbar Senior High School ("Dunbar"), an extended school day program for qualifying at-risk students.  IEP at 17; <u>see also</u> Compl. ¶ 17.

Prior to the 2013-2014 school year, staff of the District of Columbia Public Schools ("DCPS"), Mr. Douglas, and Mr. Douglas' parent discussed changing Mr. Douglas' assignment from Dunbar to another school or program.  Resolution Sess. Tr. 8-9.  Although DCPS proposed transferring him, no transfer was completed.  When Mr. Douglas attempted to attend classes at Dunbar several times in Fall 2013, Dunbar staff did not permit him to enter the school.  Compl. ¶¶ 18-21.

On October 28, 2013, Mr. Douglas filed an administrative due process complaint challenging, among other things, Dunbar's refusal to admit him.  Compl. ¶ 22; Due Process Compl.  Although his administrative complaint was assigned to a hearing officer, Mr. Douglas filed the instant complaint in this Court on November 7, 2013.  The complaint alleges that the District's refusal to allow Mr. Douglas access to his educational placement violated the

---

defendant's opposition to plaintiff's motions ("Def. PI Opp.") [Dkt. No. 5]; transcript of November 12, 2013 resolution session ("Resolution Sess. Tr.") [Dkt. No. 6-1]; this Court's Memorandum Opinion granting a stay-put order ("Mem. Op.") [Dkt. No. 8]; plaintiff's motion for attorneys' fees and costs ("Fee Mot.") [Dkt. No. 11]; defendant's opposition to plaintiff's motion for attorneys' fees and costs ("Fee Opp.") [Dkt. No. 14]; plaintiff's reply to defendant's opposition ("Fee Reply") [Dkt. No. 16]; the D.C. Superior Court's amended order appointing educational advocate ("Appointment Order") [Dkt. No. 15-1]; and this Court's Memorandum Opinion granting the District's motion to dismiss ("MTD Op.") [Dkt. No. 20].

"stay-put" provision of the IDEA, 20 U.S.C. § 1415(j), and 42 U.S.C. § 1983.[2]  Mr. Douglas simultaneously filed a motion for a preliminary injunction and a motion for a temporary restraining order, both also seeking the "stay-put" order sought in Count One of his complaint. On November 14, 2013, this Court granted Mr. Douglas' motion for a preliminary injunction, issuing a "stay-put" order, and denying the motion for a temporary restraining order as moot. Mem. Op. at 5-6.  The District since has allowed Mr. Douglas to return to Dunbar and attend the "Twilight Program."  Fee Opp. at 3.

Mr. Douglas now moves for an award of $25,499.65 in attorneys' fees and costs associated with obtaining the "stay-put" order.

## II.  LEGAL STANDARD

The Court previously has set forth the appropriate analytical framework for determining the award of attorneys' fees and costs in special education cases like this one.  See Blackman v. Dist. of Columbia, 59 F. Supp. 2d 37, 42-44 (D.D.C. 1999).  To recover reasonable attorneys' fees, a plaintiff must first demonstrate that he or she is a prevailing party in the litigation.  Id. at 40-41; see also Blackman v. Dist. of Columbia, 328 F. Supp. 2d 36, 42-45 (D.D.C. 2004).  For a party to be a prevailing party, it must have succeeded on a significant issue raised in the litigation and secured some of the benefit sought.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In addition, this benefit must reflect a change in the legal relationship between the parties, and that change must be judicially sanctioned in some way.  Blackman v. Dist. of Columbia, 328 F. Supp. 2d at 45 (citing Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res., 532 U.S. 598, 604-05 (2001)).  Once it has determined that the

---

[2]   This Court granted Mr. Douglas full relief on his Section 1415(j) claim.  As noted in this Court's Memorandum Opinion dated August 28, 2014, that claim was fully adjudicated and is no longer before the Court.  MTD Op. at 3 n.3.

plaintiff is a prevailing party, the Court then must determine whether the fees sought are reasonable by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – the so-called "lodestar" fee. Hensley v. Eckerhart, 461 U.S. at 433. See e.g., In re Olson, 884 F.2d 1415, 1423 n.13 (D.C. Cir. 1989); Sierra Club v. Jackson, 926 F. Supp. 2d 341, 346 (D.D.C. 2013).

On the issue of reasonableness, a plaintiff must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the Court can determine "*with a high degree of certainty*" that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorney's reputation and level of skill and experience with respect to this type of case, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing. In re Olson, 884 F.2d at 1423, 1428-29 (emphasis in original) (internal quotation omitted); see Hensley v. Eckerhart, 461 U.S. at 433; Blackman v. Dist. of Columbia, 397 F. Supp. 2d 12, 14 (D.D.C. 2005). At a minimum, a fee applicant must provide some information about the attorney's billing practices, hourly rates, and skill and experience, as well as the nature of the attorney's practice as it relates to this kind of litigation and the prevailing market rates in the community. Rooths v. Dist. of Columbia, 802 F. Supp. 2d 56, 60 (D.D.C. 2011); Blackman v. Dist. of Columbia, 397 F. Supp. 2d at 14-15.

Once a plaintiff has provided such information, there is a presumption that the number of hours billed and the hourly rate are reasonable, and the burden then shifts to the defendant to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for attorneys of the relevant level of skill and expertise. See Watkins v. Vance, 328 F. Supp. 2d 23, 26 (D.D.C. 2004). "[I]n the normal case the Government must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be

appropriate." Covington v. Dist. of Columbia, 57 F.3d 1101, 1109-10 (D.C. Cir. 1995) (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982)); see also Rooths v. Dist. of Columbia, 802 F. Supp. 2d at 60.

### III.  DISCUSSION

Mr. Douglas seeks to recover the fees and costs for three attorneys: Charles A. Moran, Steve Nabors, and Tanjima Islam.  In support of Mr. Douglas' motion, each attorney has submitted a declaration attesting to his or her experience and billing practices.  See Declaration of Charles A. Moran, Esq. ("Moran Decl."), Fee Mot. Ex. 4; Declaration of Steve Nabors, Esq. ("Nabors Decl."), Fee Mot. Ex. 5; Declaration of Tanjima Islam, Esq. ("Islam Decl."), Fee Mot. Ex. 6.  Attached to the motion are also invoices documenting the hours billed and the costs incurred.  See Fee Mot. Ex. 1-3.

The District opposes the fee motion on the grounds that (1) Mr. Douglas is not a "prevailing party" and thus not entitled to attorneys' fees and costs under the IDEA; (2) plaintiff's attorneys' hourly rate should be capped at $90 per hour pursuant to D.C. Code § 11-2604(a); and (3) the claimed hourly rates and number of hours should be reduced.  The Court finds the District's arguments largely unpersuasive for the reasons that follow.

*A.  Mr. Douglas is a Prevailing Party*

On November 14, 2013, this Court issued a "stay-put" order, awarding Mr. Douglas full relief on his Section 1415(j) claim and corresponding motion for a preliminary injunction.  As a result, Mr. Douglas was reenrolled at Dunbar and the District was halted from transferring him to another program, unquestionably altering the parties' legal relationship.  In these circumstances, the Court finds that Mr. Douglas is the prevailing party as to the

Section 1415(j) claim and that he therefore is entitled to associated attorneys' fees and costs. See Laster v. Dist. of Columbia, 2006 WL 2085394, at *3 (D.D.C. July 25, 2006) (party who obtains "stay-put" order is a prevailing party because "the court awarded plaintiffs the relief they sought").

The District argues that Mr. Douglas is not a prevailing party because there has been "no permanent material change [to] his legal relationship with DCPS and the merits of his pending claims have not been decided." Fee Op. at 4-5. It relies relying on decisions from the Third Circuit holding that "'stay put' orders which merely serve to maintain the status quo *pendente lite* do not afford meaningful relief on the merits of the underlying claims and will not suffice [to establish a prevailing party]." People Against Policy Violence v. City of Pittsburgh, 520 F.3d 226, 232-33 (3d Cir. 2008) (citing John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit, 318 F.3d 545, 558, 559 (3d Cir. 2003)); see also J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272-73 (3d Cir. 2003). These cases are inapplicable because the Third Circuit applies restrictions above and beyond Buckhannon, barring the recovery of attorneys' fees for any "interim" relief that does not "resolve any merits-based issue in [the plaintiff's] favor." John T. ex rel. v. Paul T. v. Del. Cnty. Intermediate Unit, 318 F.3d at 559 (noting J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d at 272, "presents IDEA claimants with a hurdle unidentified in Buckhannon"). In this Circuit, by contrast,

> [p]revailing party status . . . is not so limited. Under the D.C. Circuit's construction of Buckhannon, a litigant in this jurisdiction need only establish that he or she received "some form of judicial relief, not necessarily a court-ordered consent decree or a judgment on the merits." Turner v. Nat'l Transp. Safety Bd., 608 F.3d 12, 15 (D.C. Cir. 2010). The D.C. Circuit has recognized that, under certain circumstances, prevailing-party status may result from a favorable jurisdictional ruling, a grant of preliminary injunction, or even a judicially-sanctioned stipulation. Id. (citing with approval Dist. of Columbia v. Jeppsen ex rel. Jeppsen, 514 F.3d 1287, 1290 (D.C. Cir. 2008); Select Milk Producers, Inc. v. Johanns,

6

>400 F.3d 939, 945 (D.C. Cir. 2005); see also Carbonell v. I.N.S., 429 F.3d 894, 895-96, 899 (9th Cir. 2005)).

Texas v. Holder, 2014 WL 3895624, at *6 (D.D.C. Aug. 11, 2014); see also Laster v. Dist. of Columbia, 2006 WL 2085394, at *3.

Furthermore, the District is simply incorrect that "the merits of [plaintiff's] pending claims have not been decided." Fee Opp. at 5. The motion resulting in the "stay-put" order was premised on the same allegations in the Section 1415(j) claim set forth in Count One of his complaint and requested the same relief. Mr. Douglas' Section 1415(j) claim has been fully adjudicated on the merits and he received all the relief he requested on the claim. MTD Op. at 3 n.3.

### B. The Hourly Rates Are Reduced

Mr. Douglas seeks fees for the services of his lawyers at the following rates: $510 per hour for Charles A. Moran, an attorney with 47 years experience; $250 per hour for Steve Nabors, an attorney admitted to the District of Columbia Bar on September 6, 2013; and $250 per hour for Tanjima Islam, an attorney admitted to the District of Columbia Bar in July 2013. Fee Mot. at 5-7. These hourly rates are equivalent to those established by the Laffey Matrix for 2013-2014.  See Laffey Matrix – 2003-2014, *available at* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%20214.pdf. That schedule of attorneys' fees, first developed based on information about the prevailing rates charged by federal litigators in the District of Columbia, is maintained by the United States Attorney's Office for the District of Columbia. See id. nn.1-3. In this Circuit, the rates contained in the Laffey Matrix are typically treated as the highest rates that will be presumed to be reasonable

7

when a court reviews a petition for statutory attorneys' fees.  See Rooths v. Dist. of Columbia, 802 F. Supp. 2d at 61; Blackman v. Dist. of Columbia, 59 F. Supp. 2d at 43.

Although the USAO Laffey Matrix provides an appropriate starting point for a determination of a reasonable rate, the rates contained in the matrix represent presumptive *maximum* rates.  Furthermore, those maximum rates are appropriately paid in actions constituting "complex federal litigation."  Covington v. Dist. of Columbia, 57 F.3d at 1103.  Many judges of this Court, including the undersigned, generally cap attorneys' fees at three-quarters of the Laffey rate for routine IDEA cases – where the claims involve "simple facts, little evidence, and no novel or complicated questions of law."  Rooths v. Dist. of Columbia, 802 F. Supp. 2d at 63; see McAllister v. Dist. of Columbia, 2014 WL 2921020, at *4 (D.D.C. 2014) (collecting cases); Sykes v. Dist. of Columbia, 870 F. Supp. 2d 86, 96 (D.D.C. 2012).

Notwithstanding Mr. Douglas' bare assertions that "complex legal issues" were involved in this case, the Court concludes that obtaining a "stay-put" order is far more routine than the type of complex litigation meriting full Laffey compensation, particularly given the automatic nature of "stay-put" orders.  See Eley v. Dist. of Columbia, 2014 WL 2507937, at *3 (D.D.C. June 4, 2014) (noting that a "stay-put" order "functions, in essence, as an automatic preliminary injunction") (quoting Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996)).  Consequently, the Court will cap the hourly rates in this case at three-quarters of the relevant Laffey rate, equaling $382.50 per hour for Mr. Moran and $187.50 per hour for Mr. Nabors and Ms. Islam.

The District further argues that the hourly rate should be capped at $90 per hour for all three lawyers because Mr. Douglas' attorneys were originally appointed by the District of Columbia Superior Court.  Fee Opp. at 12-14; see D.C. Code § 11-2604.  The Court disagrees.

The rate at which the Superior Court caps reimbursement has no bearing whatsoever on the hourly rate at which a prevailing party may recover attorneys' fees in this Court.  See Clay v. Dist. Of Columbia, 2014 WL 322017, at *6 (D.D.C. Jan. 28, 2014) (rejecting this argument and noting that the District "offer[ed] no authority from this Circuit in support of its contention, and fail[ed] to demonstrate why this court should apply the $90 rate"); Staton v. Dist. Of Columbia, 2014 WL 2700894, at *4 (D.D.C. June 11, 2014) (same); Eley v. Dist. Of Columbia, 2013 WL 6092502, at *12 n.9 (D.D.C. Nov. 20, 2013) (rejecting the same argument as "so conclusory as to be spurious").[3]  This is made unmistakably clear by the Superior Court's own appointment order, which states that "[w]hen seeking payment from [defendant], such fees may be based upon the federal *Laffey* matrix."  Appointment Order at 2.  While the Superior Court appointment guarantees an attorney $90 per hour whether a party wins or loses, the IDEA, the Superior Court Appointment Order, and this Circuit's case law make clear that a "prevailing party" is entitled to reasonable market rates under the IDEA and Laffey.  See 20 U.S.C. § 1415(i)(3)(B)(i); Eley v. Dist. Of Columbia, 2013 WL 6092502, at *12-13.  In any event, the Superior Court's appointment related to the administrative proceedings, not to this federal court action.

Finally, in the view of the District, the hourly rates should be even further reduced because the plaintiff "unreasonably and unnecessarily protracted this litigation" by filing his complaint in federal court "without first attempting to obtain the same relief at the administrative level."  Fee Opp. at 10; see 20 U.S.C. § 1415(i)(3)(F) (providing for reduction in fees if the court finds the party "unreasonably protracted the final resolution of the controversy").  But the District offers no evidence that obtaining relief in the administrative proceeding would have required less work or taken less time.  Furthermore, this argument ignores the fact that the very

---

[3] Although Judge Leon reached a contrary conclusion in Price v. Dist. of Columbia, 2014 WL 3766390, at *2-3 (D.D.C. July 31, 2014), this Court respectfully disagrees.

basis for the statutory "stay-put" exception to the exhaustion requirement allows plaintiffs like Mr. Douglas to bring Section 1415(j) claims without first proceeding in the administrative action. Alston v. Dist. of Columbia, 439 F. Supp. 2d 86, 91 (D.D.C. 2006) (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. Of Educ., 297 F.3d 195, 199 (2d Cir. 2000)) ("[t]he administrative process is 'inadequate' to remedy violations of § 1415(j)"). Mr. Douglas' failure to pursue an inadequate remedy through the administrative proceeding is not a basis to reduce his attorneys' hourly rates.

### C.  The Hours Billed Are Reduced In Part

The District argues that Mr. Douglas' attorneys cannot recover fees for activities related solely to his administrative due process action. Fee Opp. at 10-11. The Court agrees. Mr. Douglas may later attempt to recover attorneys' fees related to the administrative proceeding if, and only if, he prevails in that proceeding. Attorneys' fees related solely to the administrative due process complaint are disallowed.

The District further argues that Mr. Douglas should be denied attorneys' fees for hours billed after the Court's "stay-put" order was issued on November 14, 2013. It cites to certain billing entries related to implementing this Court's "stay-put" order and ensuring that Mr. Douglas, pursuant to that order, was properly admitted to Dunbar. See, e.g., Fee Mot. Ex. 1 at 5 ("Meeting [with Dunbar] re: enforcement of order and enrollment of student into school"). Considering the District's previous efforts to exclude Mr. Douglas from attending Dunbar and transfer him to another school, the Court concludes that these entries are reasonable and recoverable. See Watkins v. Vance, 328 F. Supp. 2d at 33-34 (ordering attorneys' fees and costs under the IDEA for work done after a court order where "the effort was the direct result of a court order").

Although the District failed to raise the issue, Mr. Douglas' attorneys' fees relating to travel will be compensated at half the above indicated hourly rate. See Cooper v. United States R.R. Retirement Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994) (allowing fees for travel time at half the attorney's hourly rate); Doe v. Rumsfeld, 501 F. Supp. 2d 186, 193 (D.D.C. 2007) (same). In addition, because Mr. Douglas is the prevailing party as to the "stay-put" order and corresponding Section 1415(j) claim only, see MTD Op. at 6, all entries relating solely to his Section 1983 claim are denied. Hensley v. Eckerhart, 461 U.S. at 437 (holding that a court "may reduce [a fee] award to account for [a party's] limited success"); see, e.g., Lopez v. Dist. of Columbia, 383 F. Supp. 2d 18, 22-23 (D.D.C. 2005) (reducing attorneys' fee award in IDEA case for partial success); see MTD Op. at 6 (dismissing Mr. Douglas' Section 1983 claim for lack of subject matter jurisdiction). Furthermore, time entries related to the complaint as a whole and costs associated with the complaint as a whole are reduced by half.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the plaintiff's motion for attorneys' fees and costs. Accordingly, it is hereby

ORDERED that plaintiff's motion for attorneys' fees and costs [Dkt. No. 11] is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the District of Columbia shall pay plaintiff $16,034.00 in attorneys' fees and $975.62 in costs on or before September 30, 2014. If this amount is not paid on or before September 30, 2014, it will bear interest at the rate established by 28 U.S.C. § 1961. A calculation of the fees awarded by this Order is reproduced in the Appendix.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE: September 4, 2014                              United States District Court

APPENDIX A: ATTORNEYS' FEES AWARDED

| Attorney | Hours Billed | Hours Accepted by the Court | Hourly Rate Billed | Hourly Rate Applied by the Court (3/4 *Laffey*) | Fees per Attorney |
|---|---|---|---|---|---|
| Moran | 22.5 | 21.7 | $510.00 | $382.50 | $8,300.25 |
| Nabors | 33 | 27.7 | $250.00 | $187.50 | $5,193.75 |
| Islam | 7.4 | 7.4 | $250.00 | $187.50 | $1,387.50 |
| | | | | | |
| SUBTOTAL: | 62.9 | 56.8 | | | $14,881.50 |
| | | | | | |
| *Reduced by Half:* | | | | | |
| Moran | 1.4 | 1.4 | $510.00 | $193.75 | $271.25 |
| Nabors | 9.4 | 9.4 | $250 | $93.75 | $881.25 |
| | | | | | |
| SUBTOTAL: | 10.8 | 10.8 | | | $1,152.50 |
| | | | | | |
| TOTAL: | 73.7 | 67.6 | | | $16,034.00 |